UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD GERBER,                  :    CIVIL NO: 1:14-CV-00674
                                 :
              Plaintiff          :
                                 :    (Chief Judge Conner)
       v.                        :
                                 :    (Magistrate Judge Schwab)
WARDEN WILLIAM CAMPBELL,         :
*et al.*,                        :
                                 :
              Defendants         :
                                 :

## REPORT AND RECOMMENDATION

### I. Introduction.

The plaintiff, Richard Gerber, was committed to the Columbia County Prison as a technical parole violator. He claims that, during his short stay there, the defendants violated his constitutional rights. There is only one claim remaining—a claim that the Warden, William Campbell, transferred Gerber in retaliation for his legal activities. Currently pending is Campbell's motion for summary judgment. Because Gerber has not presented evidence to support his claim and because Campbell is entitled to qualified immunity, we recommend that the Court grant Campbell's motion for summary judgment.

## II.  Background and Procedural History.

Gerber began this case by filing a complaint and an application for leave to proceed *in forma pauperis*.  We granted Gerber leave to proceed *in forma pauperis*, and after screening the complaint, we concluded that two of the seven named defendants were entitled to Eleventh Amendment immunity and that the complaint failed to state a claim upon which relief may be granted against the other five defendants.  We granted Gerber leave to file an amended complaint.

Gerber then filed an amended complaint naming three defendants: (1) William Campbell, the Warden of the Columbia County Prison; (2) Corrections Officer Burd; and (3) a first shift nurse, who at the time he filed his amended complaint, Gerber could not identify by name, but who was later identified as Kelly Henry.  Gerber alleges that, in November of 2013, he was recommitted to the Pennsylvania Department of Corrections (DOC) as a technical parole violator.  In early January of 2014, the Pennsylvania Board of Probation and Parole decided to recommit Gerber as a technical parole violator to a state correctional institution or a county jail to serve six months pursuant to Act 122 of 2012.  The Board's decision stated that, on May 12, 2014, Gerber will be reparoled automatically without further Board action provided that he does not, among other things, commit a disciplinary infraction involving assaultive behavior. *Doc. 7-1* at 1.

2

Thereafter, on February 6, 2014, Gerber was transferred to the Columbia County Prison to serve his parole-violation term.  According to Gerber, while at the Prison, he complained about the conditions there.  Further, Gerber alleges that, on February 10, 2014, other prisoners attacked him.  According to Gerber, he was not provided needed medical treatment for the injuries he received during the attack.  The day after the attack, Gerber  met with Warden Campbell and expressed his desire to contact the police and pursue criminal charges.  According to Gerber, Campbell denied his request to contact the police and told him that he was not attacked, but rather he was involved in a fight.  Gerber alleges that Campbell, knowing that Gerber's reparole date would more than likely be rescinded, also told him that he was being removed from the Columbia County Prison and returned to the DOC.  Warden Campbell allegedly stated that the catalyst for the removal was the fact that Gerber liked to file grievances.

Through his wife, Gerber then contacted the Bloomsburg Police Department and Patrolman Golla came to the prison.  Discouraged with the direction of Golla's interview of him, Gerber abruptly ended the interview.  But, according to Gerber, an hour later, he received a misconduct, purportedly prepared by Officer Burd, charging him with nine different institutional infractions.  Gerber alleges that none of the charges against him were supported by the facts provided in Burd's report.

Less than 24 hours after Gerber received the misconduct and without receiving a misconduct hearing, he was transferred from the Columbia County Prison back to the DOC.  Back in DOC custody, Gerber was informed that as a result of being removed from the Columbia County Prison and receiving a misconduct, his case was being forwarded to the Pennsylvania Board of Probation and Parole for further review.

Gerber then submitted a grievance about the misconduct to Warden Campbell, who denied the grievance, stating among other things, that Gerber was found guilty of two charges—racial slurs and fighting—by the Disciplinary Committee based on Officer Burd's written statement and a review of the videotape.  *Doc. 7-1* at 12.  But because of "several procedural errors made by staff at Columbia County Prison," Warden Campbell granted Gerber's subsequent appeal and expunged the misconduct.  *Doc. 7-1* at 17.  According to Gerber, although Campbell expunged the misconduct, the damage had already been done as the Board rescinded his automatic reparole date as a result of the misconduct.

Gerber claims that Warden Campbell and the first shift duty nurse acted with deliberate indifference to his medical needs after the attack in violation of the Eighth Amendment.  He also claims that Warden Campbell and Officer Burd fabricated facts to have him removed from the Columbia County Prison in violation of the Eighth Amendment.  Further, he claims that Warden Campbell

4

retaliated against him for filing grievances and for contacting the Bloomsburg Police Department in violation of the First and Eighth Amendments. Finally, Gerber claims that Warden Campbell denied him due process and violated the Eighth Amendment by not providing him with a misconduct hearing and having him removed from the prison without a hearing knowing that his reparole date would be rescinded.

The Court dismissed all of Gerber's claims except one—the claim that defendant Campbell retaliated against Gerber by transferring him back to state prison in retaliation for his filing grievances and contacting the police. Campbell filed an answer to the amended complaint, and following a period of discovery, defendant Campbell filed a motion for summary judgment. For the following reasons, we recommend that the Court grant that motion for summary judgment.

## III.  Summary Judgment Standards.

Campbell moves for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial

would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed.R.Civ.P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed.R.Civ.P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*,

6

477 U.S. at 322.  Summary judgment is also appropriate if the nonmoving party

provides merely colorable, conclusory, or speculative evidence. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  There must be more than a scintilla

of evidence supporting the nonmoving party and more than some metaphysical

doubt as to the material facts. *Id.* at 252.  "Where the record taken as a whole could

not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475

U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes

over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.  A

dispute about a material fact is genuine only if there is a sufficient evidentiary

basis that would allow a reasonable fact finder to return a verdict for the non-

moving party. *Id.* at 248-49.  When "faced with a summary judgment motion, the

court must view the facts 'in the light most favorable to the nonmoving party.'"

*N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011)

(quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the

evidence or to determine the truth of the matter; rather it is to determine whether

there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.  The proper inquiry of

7

the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex,* 477 U.S. at 323). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

## IV.  Material Facts.

A party who seeks to resist a summary judgment motion must comply with Local Rule 56.1, which specifically provides that "[s]tatements of material facts in

support of, or in opposition to, a motion shall include references to the parts of the record that support the statements" and that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." Under this Rule, the failure to appropriately challenge the material facts tendered by the defendant means that those facts must be deemed admitted. Further, a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Rather, "[o]nce the moving party has supplied sufficient affidavits in support of its motion, the opposing party must respond by supplementing the record in some manner—whether by its own affidavits or otherwise—setting forth specific facts demonstrating that there is a genuinely disputed factual issue for trial." *Id.*

Here, Campbell submitted a statement of undisputed material facts and supporting documents. Gerber did not, however, respond to that statement of facts.[5] Thus, in accordance with Local Rule 56.1, the following material facts set forth by Campbell are deemed unopposed for purposes of the pending motion for summary judgment.

---

[5] Gerber did, however, file a response to the numbered paragraphs in the motion for summary judgment itself. *See Doc. 36*. Nevertheless, while he asserted that he denies many of those statements, he has not presented any evidence to support his denials.

The Columbia County Prison has entered into an inter-governmental agreement with the DOC, wherein the Columbia County Prison houses state parole violators at the facility in exchange for a *per diem* payment from the DOC for each state parole violator housed in the facility. *Doc. 31* at ¶1.  State parole violators housed at the Columbia County Prison pursuant to this inter-governmental agreement are required to abide by all prison policies and procedures, and are subject to the discipline of the Columbia County Prison. *Id.* at ¶2.  The inter-governmental agreement requires, *inter alia*, the Columbia County Prison immediately to notify the DOC if a state parole violator housed in the facility commits a serious misconduct or requires emergency medical care. *Id.* at ¶3. The DOC is permitted to retake custody of any state parole violator housed in the Columbia County Prison at its discretion. *Id.* at ¶4.

Gerber was a state parole violator who was housed at the Columbia County Prison from February 6, 2014 until February 12, 2014 pursuant to the inter-governmental agreement with the DOC. *Id.* at ¶5.[6]  On February 10, 2014, just four

---

[6]  Campbell submitted a copy of an inter-governmental agreement that was signed in 2015.  Gerber correctly asserts that that signed agreement was not in effect at the time of his transfer in 2014.  But Campbell addresses this in his declaration—he asserts that although the agreement was not finalized and signed until 2015, it is the same agreement that the Columbia County Prison and the DOC operated under in 2014.  Thus, although the exact written agreement submitted by Campbell was not in effect at the time, Campbell, through his own declaration, has submitted evidence that there was an inter-governmental agreement at the relevant time in 2014.

days after his arrival at the facility, Gerber was involved in a fight with other inmates at the Columbia County Prison. *Id.* at ¶6.  Specifically, while housed in Unit D of the facility, Gerber instigated a fight with other inmates by yelling racial slurs at those inmates, inciting them to fight. *Id.* at ¶7.  And he continued to make racially charged statements about the other inmates even after prison guards broke up the altercation. *Id.* at ¶8.  Gerber also sustained injuries requiring medical treatment as a result of the fight. *Id.* at ¶10.

As a result of inciting a fight, Gerber was charged with misconduct for his use of racial slurs and his participation in a fight. *Id.* at ¶9.  Following the fight on February 10, 2014, Warden Campbell contacted the DOC and notified John Summers, former Director of Community Corrections, that Gerber was involved in a serious misconduct and that he had sustained injuries requiring medical attention, as Warden Campbell was required to do under the inter-governmental agreement. *Id.* at ¶11.  The DOC then exercised its right under the inter-governmental agreement to retake custody of Gerber and remove him from the Columbia County Prison. *Id.* at ¶12.  Warden Campbell was not involved in the decision to remove Gerber from the Columbia County Prison. *Id.* at ¶13.

The next day, February 11, 2014, Warden Campbell met with Gerber, at which meeting Gerber requested to contact law enforcement via telephone to report the fight he was involved in the previous day. *Id.* at ¶14.   Warden Campbell

11

denied Gerber's request because inmates at the Columbia County Prison are prohibited from contacting police via telephone, and because prison officials had already contacted law enforcement to report the incident. *Id.* at ¶15.  Warden Campbell's meeting with Gerber on February 11, 2014 occurred the day after the DOC had already decided to remove Gerber from the Columbia County Prison. *Id.* at ¶16.

The DOC removed Gerber from the Columbia County Prison and returned him to a state facility on February 12, 2014, as the DOC was authorized to do under the inter-governmental agreement. *Id.* at ¶17.  On March 24, 2014, after his removal from the Columbia County Prison, Gerber submitted a grievance to Warden Campbell in which Gerber grieved, *inter alia*, the conditions of his confinement and the misconduct charges levied against him as a result of the fight on February 10, 2014. *Id.* at ¶18.  That grievance was the first grievance Gerber filed concerning his incarceration at the Columbia County Prison. *Id.* at ¶19. Gerber never filed any written grievances while he was incarcerated at the Columbia County Prison from February 6, 2014 to February 12, 2014. *Id.* at ¶20.

On March 27, 2014, Warden Campbell responded to Gerber's grievance by mail and indicated that his grievance was denied in all respects. *Id.* at ¶21.  Gerber then appealed that decision arguing that the misconduct levied against him should be expunged. *Id.* at ¶22. Warden Campbell ultimately expunged Gerber's

misconduct due solely to procedural errors that occurred during the misconduct-adjudication process. *Id.* at ¶23.

When Warden Campbell reported Gerber's serious misconduct and injuries to the DOC on February 10, 2014, he did not inform the DOC that Gerber had attempted to file grievances or contact law enforcement, as Gerber had not filed grievances or requested to contact law enforcement at that time. *Id.* at ¶24.  Gerber did not file a grievance or attempt to contact law enforcement before the DOC decided to remove him from the facility.  *Id.* at ¶25.

The DOC's decision to remove Gerber from the Columbia County Prison was based on Gerber's egregious conduct exhibited toward minority inmates and the need to provide Gerber medical care for the injuries he sustained in the fight that he incited. *Id.* at ¶26.  Gerber's unacceptable behavior in yelling racial slurs and inciting fights posed a threat to institutional security. *Id.* at ¶27.  Regardless of whether Gerber filed grievances or called the police while incarcerated, Warden Campbell would have contacted the DOC to report Gerber's misconduct and injuries, as he was required to do so under the inter-governmental agreement. *Id.* at ¶28.  Gerber was transferred out of the Columbia County Prison at the discretion of the DOC, and the transfer removed a belligerent and racially hostile inmate from the facility while permitting the DOC to provide Gerber with in-house medical treatment for the injuries he sustained in the fight. *Id.* at ¶30.

13

## V. Discussion.

Gerber's remaining claim is brought under 42 U.S.C. § 1983. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.* To establish a claim under § 1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

Here, there is no dispute that Warden Campbell was acting under color of state law. Gerber claims that Warden Campbell violated the First Amendment by transferring him from the Columbia County Prison in retaliation because he filed grievances and because he contacted the Bloomsburg Police Department.

Retaliation claims are judged against exacting legal standards. A prisoner claiming that a defendant retaliated against him for exercising his constitutional rights must prove that: (1) his conduct was constitutionally protected; (2) he suffered "adverse action" at the hands of the defendant; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision of the

14

defendant. *Carter v. McGrady,* 292 F.3d 152, 158 (3d Cir. 2002). "Once a prisoner has made his *prima facie* case, the burden shifts to the defendant to prove by a preponderance of the evidence that [he or she] 'would have made the same decision absent the protected conduct for reasons reasonably related to penological interest.'" *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 334 (3rd Cir. 2001)).

Campbell does not assert that Gerber's actions of filing a grievance and contacting, or requesting to contact, the police are not constitutionally protected conduct, but he contends that Gerber cannot show a causal connection between his constitutionally protected conduct and his transfer back to state custody.  As set forth above, it is undisputed that Gerber did not file a grievance until March 24, 2014, which is more than a month after he was transferred back to state custody.  It is also undisputed that Gerber did not contact or request Campbell to contact the police until February 11, 2014, which was the day after the DOC decided to retake custody of Gerber.  Further, when Campbell contacted the DOC about Gerber, he did not tell the DOC that Gerber had filed grievances or contacted the police because at the time Gerber had done neither.  Given these circumstances, there logically could not have been a causal connection between Gerber's filing of the grievance and his transfer or between Gerber's contacting or requesting to contact the police and his transfer since the decision to transfer was made before those

15

activities occurred.  Based on the undisputed evidence,[7] a reasonable trier of fact

could not conclude that Gerber's constitutionally protected conduct was a

substantial or motivating factor in the transfer decision.  Accordingly, Gerber has

not sustained his burden with respect to a required element of his retaliation claim,

and defendant Campbell is entitled to summary judgment.

There are additional reasons why defendant Campbell is entitled to summary

judgment.  We briefly discuss those.

Campbell contends that he is entitled to summary judgment because Gerber

would have been transferred for legitimate penological reasons even if he had not

engaged in constitutionally protected conduct.   In this regard, Campbell asserts

that he notified the DOC of Gerber's misconduct and injuries as per the inter-

governmental agreement between the DOC and the Columbia County Prison, and

he would have done so regardless of whether Gerber engaged in constitutionally

protected conduct.  Further, according to Campbell, the DOC unilaterally decided

to remove Gerber from the Columbia County Prison, and Gerber's removal served

the legitimate penological interest in removing a belligerent and racially hostile

inmate from the prison while permitting the DOC to provide in-house medical

treatment for Gerber's injuries.  As there is no evidence in the record to contradict

_____

[7] Gerber asserts that he, in fact, filed grievances before he was transferred back into
the custody of the DOC, and he "believes wholeheartedly" that Campbell did not
contact the DOC until after he got the police involved.  But Gerber has not pointed
to any record evidence to support his assertion and belief.

this, Campbell has shown that the decision to transfer Gerber would have been made even had Gerber not engaged in constitutionally protected conduct.  Thus, Campbell is entitled to summary judgment for this reason also.

Campbell also contends that he is entitled to summary judgment because he was not personally involved in the decision to transfer Gerber.  Liability in a 42 U.S.C. §1983 action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct.  In other words, defendants are "liable only for their own unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes,* 135 S.Ct. 2042 (2015).  According to Campbell, he was not personally involved in the decision to transfer Gerber as all he did was contact the DOC in accordance with the inter-governmental agreement to report Gerber's misconduct and injuries, and the DOC decided to transfer Gerber.  As Gerber has not presented any evidence that Campbell was personally involved in the transfer decision, this too is a reason to grant summary judgment to Campbell.

Finally, Campbell contends that he is entitled to qualified immunity.  Despite their participation in constitutionally impermissible conduct, government officials "may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer,* 536 U.S. 730, 739

(2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz,* 533 U.S. 194, 202 (2001).  If the law did not put the officer on notice that his conduct would be clearly unlawful, qualified immunity is appropriate. *Bayer v. Monroe County Children & Youth Services*, 577 F.3d 186, 193 (3d Cir. 2009).  "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle v. Howards,* 132 S.Ct. 2088, 2093 (2012) (quoting *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2083 (2011)).  "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quoting *al-Kidd*, 131 S. Ct. at 2085).

At the time of the events in this case, the general law regarding retaliation claims was clearly established.  But for qualified immunity purposes, the law cannot be defined at such "a high level of generality."*al-Kidd*, 563 U.S. at 2084. Rather, because the qualified-immunity inquiry "focuses on the official's actual situation, the analysis 'must be undertaken in light of the specific context of the

case, not as a broad general proposition. . . .'" *Montanez v. Thompson*, 603 F.3d 243, 251 (3d Cir. 2010) (quoting *Saucier,* 533 U.S. at 201).

Here, the law did not put Campbell on notice that reporting Gerber's misconduct and injuries pursuant to the inter-governmental agreement violated Gerber's rights.  Accordingly, the law in this regard was not clearly established and Campbell is entitled to qualified immunity.

## VI.  Recommendation.

For the foregoing reasons, we recommend that the Court grant Campbell's motion (doc.30) for summary judgment.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 3rd day of May, 2016.

**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge